MARC X. CARLOS, ESQ.
State Bar Number: 132987
**BARDSLEY & CARLOS, L.L.P.**
424 F Street, Suite 205
San Diego, CA 92101
Telephone:   (619) 702-3226
Facsimile:   (619) 702-5415

Attorney for Defendant
**MAMBASSE KOULABALO PATARA**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE BARRY T. MOSKOWITZ)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.:  18CR2342-BTM |
| Plaintiff, | Date:      December 7, 2018<br>Time:      3:30 p.m. |
| v. | **NOTICE OF MOTIONS AND MOTIONS IN LIMINE** |
| MAMBASSE KOULABALO PATARA, | PRECLUDE 404(b) EVIDENCE;<br>PRECLUDE 403 EVIDENCE;<br>PRECLUDE 609 EVIDENCE;<br>PRECLUDE EXPERT TESTIMONY;<br>ADMIT EVIDENCE RELATING TO<br>MR. PATARA'S EMPLOYMENT AS<br>A PEACE OFFICER;<br>ADMIT EVIDENCE OF MS.<br>HERNANDEZ'S IMMIGRATION<br>HISTORY;<br>ADMIT TESTIMONY OF MR.<br>PATARA'S OWN IMMIGRATION<br>HISTORY;<br>ADMIT EVIDENCE RELATING TO<br>MR. RAMIREZ'S IDENTIFICATION<br>AND MR. LOPEZ'S NON-<br>IDENTIFICATION OF MR.<br>PATARA;<br>ADMIT RECORDS OF MR.<br>PATARA'S, MR. RAMIREZ'S, AND<br>MR. LOPEZ'S IMMIGRATION<br>ENCOUNTERS; AND<br>LEAVE TO FILE ADDITIONAL<br>MOTIONS |
| Defendant. | |

1

**TO:** **ADAM L. BRAVERMAN, UNITED STATES ATTORNEY FOR THE SOUTHERN DISTRICT OF CALIFORNIA; AND LARA A. STINGLEY, ASSISTANT UNITED STATES ATTORNEY:**

PLEASE TAKE NOTICE that on December 7, 2018, at 3:30 p.m., or as soon thereafter as counsel may be heard, the defendant, MAMBASSE KOULABALO PATARA, by and through his attorney, Marc X. Carlos, will bring the below-listed motions.

## MOTIONS

The defendant, MAMBASSE KOULABALO PATARA, by and through his counsel, Marc X. Carlos, hereby moves this Court to:

1) PRECLUDE 404(b) EVIDENCE;

2) PRECLUDE 403 EVIDENCE;

3) PRECLUDE 609 EVIDENCE;

4) PRECLUDE EXPERT TESTIMONY;

5) ADMIT EVIDENCE RELATING TO MR. PATARA'S EMPLOYMENT AND TRAINING AS A PEACE OFFICER;

6) ADMIT EVIDENCE OF MS. HERNANDEZ'S IMMIGRATION HISTORY;

7) ADMIT TESTIMONY OF MR. PATARA'S OWN IMMIGRATION HISTORY;

8) ADMIT EVIDENCE RELATING TO MR. RAMIREZ'S IDENTIFICATION AND MR. LOPEZ'S NON-IDENTIFICATION OF MR. PATARA.

9) ADMIT RECORDS OF MR. PATARA'S, MR. RAMIREZ'S, AND MR. LOPEZ'S PREVIOUS IMMIGRATION ENCOUNTERS; AND

10) GRANT LEAVE TO FILE ADDITIONAL MOTIONS.

These motions are based upon the instant motions and notice of motions, the

2

attached statement of facts and memorandum of points and authorities, the records in the above-entitled cause, and any and all further matters that may be brought to the Court's attention in the hearing on these motions.

Dated: <u>November 23, 2018</u>                          Respectfully Submitted,

<u>s/Marc X. Carlos</u>
Marc X. Carlos

Attorney for Defendant
Mambasse Patara

3

1  MARC X. CARLOS, ESQ.
2  State Bar Number: 132987
   **BARDSLEY & CARLOS, L.L.P.**
3  424 F Street, Suite 205
   San Diego, CA 92101
4  Telephone:  (619) 702-3226
   Facsimile:  (619) 702-5415
5
   Attorney for Defendant
6  **MAMBASSE KOULABALO PATARA**

7              UNITED STATES DISTRICT COURT

8             SOUTHERN DISTRICT OF CALIFORNIA

9            **(HONORABLE BARRY T. MOSKOWITZ)**

10 UNITED STATES OF AMERICA,            )   Case No.:  18CR2342-BTM
                                        )
11                                      )   Date:      December 7, 2018
                                        )   Time:      3:30 p.m.
12                         Plaintiff,   )
                                        )   **POINTS AND AUTHORITIES IN**
13    v.                                )   **SUPPORT OF MOTIONS TO:**
                                        )
14                                      )   PRECLUDE 404(b) EVIDENCE;
15 MAMBASSE KOULABALO PATARA,           )   PRECLUDE 403 EVIDENCE;
                                        )   PRECLUDE 609 EVIDENCE;
16                         Defendant.   )   PRECLUDE EXPERT TESTIMONY;
                                        )   ADMIT EVIDENCE RELATING TO
17                                      )   MR. PATARA'S EMPLOYMENT AS
                                        )   A PEACE OFFICER;
18                                      )   ADMIT EVIDENCE OF MS.
                                        )   HERNANDEZ'S IMMIGRATION
19                                      )   HISTORY;
                                        )   ADMIT TESTIMONY OF MR.
20                                      )   PATARA'S OWN IMMIGRATION
                                        )   HISTORY;
21                                      )   ADMIT EVIDENCE RELATING TO
                                        )   MR. RAMIREZ'S IDENTIFICATION
22                                      )   AND MR. LOPEZ'S NON-
                                        )   IDENTIFICATION OF MR.
23                                      )   PATARA;
                                        )   ADMIT RECORDS OF MR.
24                                      )   PATARA'S, MR. RAMIREZ'S, AND
                                        )   MR. LOPEZ'S IMMIGRATION
25                                      )   ENCOUNTERS; AND
                                        )   LEAVE TO FILE ADDITIONAL
26 _____  )   MOTIONS
27
                              4
28
───────────────────────────────────────────────────────────

## STATEMENT OF THE CASE

In the instant case, defendant MAMBASSE KOULABALO PATARA (hereinafter "Mr. PATARA") is charged in a single-count information alleging Transportation of an Alien and Aiding and Abetting, in violation of Title 8, U.S.C. §§ 1324(a)(1)(A)(ii) and (v)(II). On July 5, 2018, the defendant was indicted on a superseding indictment, adding an additional defendant. By October 4, 2018, a second superseding indictment, adding another defendant, was filed by the United States Attorney's Office.

This second superseding indictment specifically alleges that on or about April 24, 2018, within the Southern District of California, defendants MAMBASSE KOULABALO PATARA, German Ramirez-Gonzalez (hereinafter "Mr. Ramirez"), and Mary Aragon aka Mary Delgado (hereinafter "Ms. Aragon"), knowingly and intentionally transport and move an alien, namely, Fermin Lopez (hereinafter "Mr. Lopez"), in violation of Title 8, U.S.C. §§ 1324(a)(1)(A)(ii) and (v)(II). Mr. PATARA has entered a plea of not guilty to all charges against him.

Jury trial in this matter is scheduled for December 10, 2018, at 9:30 a.m., with a motion in limine hearing set for December 7, 2018, at 3:30 p.m.

## STATEMENT OF FACTS

**A.  Events Surrounding the Arrest**

On April 24, 2018, at approximately 12:15 AM, a Black 2006 Toyota Corolla four door sedan approached the primary inspection area of the Interstate 8 Border Patrol Immigration checkpoint near Pine Valley, California. At the time, the vehicle was driven by MAMBASSE KOULABALO PATARA, who was the vehicle's registered owner, along with German Ramirez-Gonzalez sitting in the front passenger seat, and Fermin Lopez sleeping in the backseat. Mr. PATARA presented a Los Angeles Police Department (LAPD) identification card and stated that he was an off-duty police officer

with the LAPD.   The Border Patrol Agent working at primary inspection, Agent Francisco Gamez (hereinafter "Agent Gamez"), proceeded to ask Mr. PATARA whether he is a United States Citizen.  Mr. PATARA asserted that he is.  The agent then asked Mr. Ramirez whether he is a United States Citizen, to which Mr. Ramirez answered positively.  The BPA then asked whether Mr. PATARA knew the citizenship of Mr. Lopez, who was sleeping in the backseat at the time.  Mr. PATARA stated that Mr. Lopez is a United States Citizen.  Mr. Lopez was woken up and asked about his citizenship, to which he affirmed that he is a United States Citizen.  Agent Gamez proceeded to refer the vehicle to secondary inspection.

At secondary inspection, Mr. PATARA and company encountered Border Patrol Agent Angel Moreno (hereinafter "Agent Moreno"), whom began to speak with Mr. PATARA.  Mr. PATARA informed Agent Moreno that he was a police officer with the LAPD and that he was in possession of his service issued weapon.  Mr. PATARA handed Agent Moreno his LAPD identification card and exited the vehicle at the agent's request.  Agent Moreno performed a pat down on Mr. PATARA and discovered a pistol concealed in the rear of Mr. PATARA's waistband and secured the weapon.  Agent Moreno then performed an immigration inspection on both Mr. Ramirez and Mr. Lopez, both of whom admitted they did not possess immigration documents that would allow them to enter or remain in the United States legally.

Mr. PATARA, Mr. Ramirez, and Mr. Lopez were then transported to the Campo Border Patrol Station, where Mr. Ramirez and Mr. Lopez were queried through various Department of Homeland Security databases that confirmed their illegal presence.   At approximately 1:30 AM, Mr. PATARA, Mr. Ramirez, and Mr. Lopez were placed under arrest.

At the time, Mr. Ramirez and Mr. Lopez, were both being held as Material Witnesses.   During post-arrest statements, both Mr. Ramirez and Mr. Lopez were

presented with a photographic lineup which included Mr. PATARA as one of the individuals. While Mr. Ramirez was able to positively identify Mr. PATARA as the driver, Mr. Lopez was unable to identify Mr. PATARA. After processing, records check and fingerprinting reveal that Mr. PATARA had two total immigration encounters, including this arrest herein and his Application for Naturalization in 2005. Meanwhile, Mr. Lopez's fingerprints reveal that he had sixteen (16) previous immigration encounters while Mr. Ramirez had thirty-four (34). Both Mr. Lopez's and Mr. Ramirez's status throughout the Department of Homeland Security Database are currently classified as "Watchlist."

**B.    Mr. Patara's Background and Connection to Codefendants**

Mr. PATARA is a naturalized United States Citizen who was born in the Togolese Republic (Togo) of West Africa. He came to the United States in 1999 as a visitor on a B1 Visa, which he extended twice. Mr. PATARA received his Permanent Resident Card in 2003 through his marriage with his ex-wife. Mr. PATARA also enlisted in the United States Marine Corps (USMC) in 2003 and was honorably discharged in 2007. Through the USMC, Mr. PATARA became a naturalized United States Citizen in 2005.

In 2006, Mr. PATARA married his current wife, Minerva Hernandez, who is a Mexican Citizen. Their union produced one child, Mazamasso "Maz" (age 9). Mr. PATARA has one child from his previous marriage, Samuel (age 17), while Ms. Hernandez has two children from a previous relationship: Ricardo (age 27) and Brian (age 21). Ms. Hernandez first applied for a Permanent Resident Card in 2006 and was unsuccessful. Ms. Hernandez then applied again for a second time in 2013. In 2016, Ms. Hernandez was requested to visit the USCIS office in Mexico and was told that she had to remain in Mexico until her application for a Permanent Resident Card got approved. Ms. Hernandez remained in Mexico, away from her husband and children, for two years until 2018, when she received her Green Card. Mr. PATARA would drive down to

Mexico every two months to check up on Ms. Hernandez.

Mr. PATARA first met Mr. Ramirez about three years ago when Mr. Ramirez began doing work on Mr. PATARA's property.  Mr. Ramirez also worked on many of Mr. PATARA's neighbor's properties as well.  Mr. PATARA and Mr. Ramirez then started a relationship in which Mr. Ramirez would stop by Mr. PATARA's house once in a while for a beer if he was working at a nearby neighbor's home.

Three months prior to the arrest herein, Mr. PATARA had no contact with Mr. Ramirez.  On the day of the arrest, Mr. Ramirez contacted Mr. PATARA inviting him to join him and his wife in a casino.  At the time, Mr. PATARA had been confined at home for eight months rehabilitating his injury and wanted some fresh air and a change of scenery.  Mr. PATARA asked Ms. Hernandez to drive him and the two drove to meet with Mr. Ramirez and Ms. Aragon.  Once all parties met up, Ms. Hernandez stated that she would like to go home to her children as it was late and Ms. Aragon asked Ms. Hernandez to drive her car for her as she was pregnant and her feet hurt.  An unknown individual got out of Ms. Aragon's car and Mr. Ramirez stated that the individual was his "uncle," Mr. Lopez.  The wives drove back in Ms. Aragon's car while Mr. Ramirez and Mr. Lopez drove with Mr. PATARA to a casino before heading back home and encountering the Interstate 8 Border Patrol Checkpoint.

## POINTS AND AUTHORITIES

### I.
### MOTION TO EXCLUDE ANY AND ALL 404(b) EVIDENCE

**A.**   **The Government Has Not Complied With the Notice Requirements of Fed. R. Evid. 404(b).**

Federal Rule of Evidence 404(b) requires that the Government give notice of the "general nature" of any prior act evidence that it may seek to introduce. As of this writing, defense counsel assumes that the Government will seek to admit any prior

convictions possible. Because the Government has provided no notice of the "general nature" of such evidence, – let alone discovery – any such evidence should be excluded for failure to comply with Rule 404(b).  **At present, counsel is unaware of any 404(b) evidence being proffered by the Government.**

## B.   404(b) Evidence Must Be Excluded.

In this Country it is a settled and fundamental principle that persons charged with crimes must be tried for what they allegedly did, not for who they are.  United States v. Hodges, 770 F.2d 1475, 1479 (9th Cir. 1985). The Ninth Circuit Court of Appeals has observed:

> Under our system, an individual may be convicted only for the offense of which he is charged and not for other unrelated criminal acts which he may have committed. Therefore, the guilt or innocence of the accused must be established by evidence relevant to the particular offense being tried, not by showing that defendant engaged in other acts of wrongdoing.

Id.  No matter how vile or despicable a person may appear to be, he or she is entitled to a fair trial.  Id.  Constitutional provisions clearly provide that individuals may only be convicted for the crimes with which they are charged; they may not be subject to criminal conviction merely because they have a detestable or abhorrent background.  Id.

Mr. PATARA moves to exclude evidence of any of his prior convictions. As of this writing, defense counsel is unaware of any prior convictions revealed through the process of discovery.  However, if the Government is aware of any prior convictions that it intends to use, defense counsel reserves the right to move this Court to preclude the Government from presenting any Rule 404(b) evidence during trial.

///

///

///

## II.
## EVIDENCE OF MR. PATARA'S PRIOR CRIMINAL HISTORY IS PREJUDICIAL (RULE 403) AND SHOULD NOT BE ADMITTED UNDER RULE 609

Once again, counsel is unaware of any prior conviction which may be attributed to Mr. PATARA.  Should the government discover any prior criminal history, Mr. PATARA moves to exclude such evidence.  It is anticipated that if Mr. PATARA testifies, the Government will attempt to introduce all or some of his prior convictions, if any, as impeachment material under Rule 609(a)(1) of the Federal Rules of Evidence.  However, even under Rule 609(a)(1), such evidence is inadmissible.  Rule 609 provides:

> For the purpose of attacking the credibility of a witness, (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and *evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs the prejudicial effect to the accused*.

Fed. R. Evid. 609(a)(1) (emphasis added).

The plain language of Rule 609(a)(1) and the 1990 Advisory Committee Note clearly indicate that the standard governing the admissibility of a criminal defendant's prior felony conviction is more stringent than the standard governing the admissibility of prior felony convictions of other witnesses.  See 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence, § 609[04], at 609-42 (1996) ("The amended Rule 609(a)(1) was intended to resolve the problems of fairness by treating criminal defendants differently from other witnesses. The Advisory Committee was aware of the 'unique risk of prejudice' faced by criminal defendants who want to testify on their own behalf: that prior conviction evidence will be 'misused by a jury as propensity evidence.'") (quoting 1990 Advisory Committee Note). Specifically, in cases where the witness is not a criminal defendant, it is presumed that the prior conviction is admissible

and therefore the party seeking exclusion has the burden of showing that the probative value of the prior conviction "is substantially outweighed by the danger of unfair prejudice" under Federal Rule of Evidence 403. Such a standard, however, does not apply to the prior convictions of testifying criminal defendants. Rather, there is a presumption against the admission of a criminal defendant's prior conviction and "[t]he Government bears the burden of showing…that the proffered evidence's probative value *substantially* outweighs its prejudicial effect." United States v. Alexander, 48 F.3d 1477, 1488 (9th Cir. 1995) (emphasis added), cert. denied, 516 U.S. 878 (1995).

Whether the Government has successfully rebutted the presumption against admissibility depends on the balancing of five factors outlined by the Ninth Circuit in United States v. Cook, 608 F.2d 1175 (9th Cir. 1979) (en banc), overruled on other grounds, Luce v. United States, 469 U.S. 38 (1984). These factors are: (1) the impeachment value of the prior conviction; (2) the temporal relationship between the conviction and the subsequent history of the defendant; (3) the similarity between the prior offense and the offense charged; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. Cook, 608 F.2d at 1185 n.8, citing Gordon v. United States, 383 F.2d 936, 940 (D.C. Cir. 1967), cert. denied, 390 U.S. 1029 (1968).

If such an occasion arises where the Government discovers and seeks to admit evidence of any prior conviction, it must show that the probative value of Mr. PATARA's prior convictions substantially outweighs its prejudicial effect in order to rebut the presumption against admissibility.  Should Mr. PATARA choose to testify on his behalf, such evidence under Rule 609 of the Federal Rules of Evidence should not be admissible.

///

///

# III.
# EXPERT TESTIMONY THAT HAS NOT BEEN DISCLOSED SHOULD BE EXCLUDED

## A.   Prerequisites for Expert Testimony

Federal Rule of Evidence 702 allows the admission of opinion evidence if "scientific, technical, or specialized knowledge *will assist the trier of fact to understand the evidence or to determine a fact in issue*…and the witness is qualified as an expert" (emphasis added).  Fed. R. Evid. 702.  Before admitting any expert testimony in this trial, this Court should determine on the record if the proffered testimony will assist the trier of fact on a contested issue, and if its probative value outweighs its prejudicial effect.  Fed. R. Evid. 702; Fed. R. Evid. 403.  In addition, under Federal Rule of Evidence 704, it is impermissible to allow an expert to testify to the knowledge element of an offense because "[s]uch ultimate issues are matters for the trier of fact alone."  Fed. R. Evid. 704.

## B.   If This Court Allows Any Government Expert Testimony, the Grounds for the Expert's Opinion Must Be Revealed to the Defense Immediately

Congress recently amended Federal Rule of Criminal Procedure 16, the discovery rule, to provide for expanded discovery on expert witnesses.  It has added the following section:

> Expert Witnesses**.** At the defendant's request, the government must give to the defendant a written summary of testimony the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial…The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Fed. R. Crim. P. 16(a)(1)(G).

The purpose of this amendment was to "minimize the surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test [rebut or impeach] the merit of the expert's

testimony through focused cross-examination." Notes of Advisory Committee on 1993 Amendment. A key aspect of the amended rule is that the Government must provide the defense with a summary of the bases underlying the expert's opinion. In this case, such a summary would include all information used by the expert to testify about alien smuggling operations (if such testimony is allowed), or used by the agent in forming his or her opinion about the value of the drugs seized in this case.

Thus far, the Government has given no notice of any expert witness testimony. If the Government seeks to offer expert testimony without 1) timely notifying Mr. PATARA of the expert and his or her qualifications; 2) providing a summary of the expected testimony; and 3) providing a summary of the bases of the expert's opinion, this Court should exclude such witnesses from testifying at trial. If the Government fails to comply with this request, Mr. PATARA vigorously opposes any expert testimony offered by its witnesses as violating the federal rules on discovery.

## IV.
## MOTION TO ADMIT TESTIMONY RELATING TO MR. PATARA'S EMPLOYMENT AND TRAINING AS A PEACE OFFICER

### A.   Evidence is Relevant under Rule 401 and 402

The test for relevance provides that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and the fact is material to the case. Fed. R. Evid. 401.

Defense counsel seeks to admit testimony by Mr. PATARA regarding his employment as a police officer with the Los Angeles Police Department (LAPD) and his statements made to border patrol agents at the Interstate 8 Border Patrol Checkpoint in regard to the same. Specifically, defense counsel seeks to admit testimony regarding Mr. PATARA's employment and training as a police officer and as trained, he sought to advise law enforcement his possession of an off duty firearm. This evidence is relevant

as it has a tendency to make the fact that Mr. PATARA was using his status as a peace officer to pass through the checkpoint without inspection less probable. This fact is of consequence to the case as it points to an essential element of the crime, which the Government has the burden of establishing: whether Mr. PATARA had the necessary knowledge and intent needed to be convicted of transporting illegal aliens.

**B.   The Probative Value Exceeds Any Risk of Unfair Prejudice**

With exceptions, all relevant evidence is admissible at trial. Fed. R. Evid. 401, 402. Under certain circumstances, evidence that is admittedly relevant can be excluded at trial "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. "Evidence is unfairly prejudicial if it 'makes a conviction more likely because it provokes an emotional response in the jury or otherwise affect adversely the jury's attitude toward the defendant *wholly apart from its judgment as to his guilt or innocence of the crime charged.'*" United States v. Yazzie, 59 F.3d 807, 811 (9th Cir. 1995) (emphasis in Yazzie) (quoting United States v. Johnson, 820 F.2d 1065, 1069 (9th Cir. 1987)). The determination whether prejudice would be "unfair" is within the trial court's discretion. United States v. Verduzco, 373 F.3d 1022, 1029 n.2 (9th Cir. 2004). "'As long as it appears from the record as a whole that the trial judge adequately weighed the probative value and prejudicial effect of proffered evidence before its admission, we conclude that the demands of Rule 403 have been met.'" Id. (quoting United States v. Sangrey, 586 F.2d 1312, 1315 (9th Cir. 1978)).

As the Supreme Court has recognized, in analyzing the admissibility of evidence, the trial court should make its determinations "with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case." Old Chief v. United States, 519 U.S. 172, 183 (1997).

///

14

Certainly, evidence that Mr. PATARA made statements in regards to his employment as a peace officer at a checkpoint is highly probative to his intent and motive, or lack thereof, to commit the offense.  Should the Government attempt to preclude this testimony on the grounds that Mr. PATARA was concealing a weapon while in furtherance of a crime, this inadmissibility would present a danger of unfair prejudice against Mr. PATARA as it runs the risk of the jury deciding the case on an improper basis.  In analyzing the admissibility of evidence, the trial court should make its determination with an appreciation of the defense's need for evidentiary richness and allow the defense to introduce this evidence.

## C.   Testimony is Not Barred Under the Rule Against Hearsay

Rule 801 defines hearsay as any out-of-court statement offered in court to prove the truth of the matter asserted in the statement.  Fed. R. Evid. 801.  Rule 803 provides the Exceptions to the Rule Against Hearsay.  Fed. R. Evid. 803.  Specifically, Rule 803(3) allows for "a statement of the declarant's then-existing state of mind (such as motive, intent, or plan)…"  Id.

Here, Mr. PATARA's statements made to border patrol agents at the checkpoint are out of court statements offered in court to prove that he is in fact employed as an LAPD officer and that he was in possession of service issued weapon at the time of the encounter.  This evidence is not barred from the Rule against Hearsay as they are statements made of the declarant's, Mr. PATARA's, then-existing statement of mind in regards to his motive for carrying a weapon on his persons.  Therefore, this testimony is an exception to the rule against hearsay under FRE 803(3) and should be admitted.

///

///

///

///

1

## V.
## MOTION TO ADMIT EVIDENCE OF MS. HERNANDEZ'S IMMIGRATION HISTORY UNDER 404(b) AS LACK OF MOTIVE

Mr. PATARA submits that he should be allowed to admit evidence relating to his wife's immigration history.  Rule 404(b) does not prohibit the admission of such testimony.  Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident…

Fed. R. Evid. 404(b).

Specifically, evidence that Mr. PATARA assisted Ms. Hernandez in her lawful process to obtain a Permanent Resident Card demonstrates a lack of motive to commit an immigration offense such as transporting illegal aliens.  Mr. PATARA spent years assisting Ms. Hernandez in obtaining her Green Card as well as having to endure two years away from his wife when she had to remain in Mexico from 2016 to 2018.  Ms. Hernandez's process in obtaining her Permanent Resident Card was a prolonged process to say the least.  She first applied in 2006 and was unsuccessful.  It was not until Ms. Hernandez applied again in 2013 and after two years away from her husband and children, did she finally obtain a Permanent Resident Card in March of 2018.  In addition, Mr. PATARA made efforts to travel to Mexico every two months to check up on Ms. Hernandez.  These numerous efforts indicate Mr. PATARA's earnest attempt to ensure that Ms. Hernandez receives her Green Card lawfully.  Evidence of this earnest attempt contradicts the notion that Mr. PATARA would violate immigration laws in order to transport Mr. Lopez, someone he just met.  As such, evidence relating to Mr. PATARA's assistance with Ms. Hernandez's immigration process should be admitted under Rule 404(b) as proof of lack of motive.

## VI.
### MOTION TO ADMIT TESTIMONY RELATING TO MR. PATARA'S OWN IMMIGRATION HISTORY UNDER 404(b) AS LACK OF MOTIVE AND INTENT

Similarly, under Rule 404(b), testimony relating to Mr. PATARA's own immigration history is also admissible to show a lack of motive and intent to violate U.S. immigration laws.  Mr. PATARA first came to the United States in 1999 on a B1 Visitor's Visa, which he extended twice.  He then received his Permanent Residence Card in 2003 through his first marriage.  It was not until 2005 when Mr. PATARA became a naturalized United States Citizen through the assistance of the United States Marine Corps.  Mr. PATARA has spent his life following the laws of the United States in order to legally obtain status within the country.  He also worked hard to achieve his career as a peace officer within the country as well as having spent four years in service to the country within the USMC.  These prior actions establish a lack of motive, intent, preparation, and plan to violate the immigration laws of the U.S.  Thus, such evidence should be admitted under Rule 404(b) for the above purposes.

## VII.
### MOTION TO ADMIT TESTIMONY RELATING TO MR. RAMIREZ'S IDENTIFICATION AND MR. LOPEZ'S NON-IDENTIFICATION OF MR. PATARA UNDER 801(d)(1)(C)

Photographic lineup identifications are admissible as non-hearsay statements under Rule 801(d)(1)(C) as long as the identifying witness testifies at trial about the prior identification and is subject to cross-examination.  Fed. R. Evid. 801(d)(1)(C).  Similarly, any statements, including inability to identify a certain person, made in response to photographic lineup identifications are also admissible as non-hearsay statements as long as the witness testifies at trial about the prior non-identification.

Here, Mr. Lopez was detained as a Material Witness subsequent the arrest of Mr. PATARA for transportation of illegal aliens.  During his post-arrest statement, Mr. Lopez was shown a photographic lineup which included Mr. PATARA as well as five other male individuals.  Mr. Lopez was unable to identify Mr. PATARA.  Defense counsel seeks to admit Mr. Lopez's testimony to confirm that he was not able to identify Mr. PATARA as the driver of the vehicle.  This testimony indicates a lack of familiarity between Mr. PATARA and Mr. Lopez as well as a lack of motive and opportunity for Mr. PATARA to risk his career and his efforts to be a law-abiding citizen to commit this offense of transporting Mr. Lopez.

On the other hand, Mr. Ramirez was able to positively identify Mr. PATARA when shown a photographic lineup of six male individuals, including Mr. PATARA.  Defense counsel seeks to admit this testimony of Mr. Ramirez's positive identification of Mr. PATARA as the driver under Rule 801(d)(1)(C) to highlight the inconsistencies of Mr. Ramirez's testimony from Mr. Lopez's testimony.  This inconsistency suggests that Mr. Ramirez and his wife, Ms. Aragon, has motive to criminate Mr. PATARA in this offense. This is evidenced by the fact that Mr. Ramirez and Ms. Aragon were the ones who harbored Mr. Lopez first and referred to him as Mr. Ramirez's "uncle" before instructing him to get into Mr. PATARA's car when the parties met in El Centro.  Therefore, these testimonies should be admitted as non-hearsay.

## VIII.
## MOTION TO ADMIT RECORDS OF MR. PATARA'S, MR. RAMIREZ-GONZALEZ'S, AND MR. LOPEZ'S PREVIOUS IMMIGRATION ENCOUNTERS UNDER 404(B) AND 803(6)

Rule 404(b) provides that evidence of other wrongs or acts are generally not admissible to show action in conformity with the character of a person, but are admissible as proof of opportunity, preparation, plan, knowledge, or lack thereof.  Fed. R. Evid.

404(b).  In addition, Rule 803(6) provides an exception to the hearsay rule that allows records of a regularly conducted activity to be admitted if:

> (A) the record was made at or near the time by – or from information transmitted by – someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

Discovery relating to Mr. PATARA's, Mr. Ramirez's and Mr. Lopez's arrest includes immigration encounters of all three individual across various Department of Homeland Security databases.  Defense counsel moves in limine to admit this evidence in regards to the three individual's previous immigration encounters as proof of opportunity, preparation, plan, and knowledge on the part of Mr. Ramirez and Mr. Lopez and lack thereof on the part of Mr. PATARA.

At trial, defense counsel anticipates to offer records documenting Mr. PATARA's, Mr. Ramirez's and Mr. Lopez's immigration encounters acquired through fingerprinting. Specifically, defense counsel seeks to introduce the evidence to show that Mr. PATARA had only two immigration encounters that consisted of this arrest herein and his application for Naturalization of Citizenship in 2005.  Conversely, Mr. Ramirez has had thirty-four (34) immigration encounters, including but not limited to being removed from the U.S. multiple times as an alien and being apprehended by border patrol.  Similarly, Mr. Lopez has had sixteen (16) encounters with immigration, including illegal presence, multiple removals as an alien, and re-entry of removed alien.  Both Mr. Ramirez and Mr.

Lopez are classified as "Watchlist" status on the Department of Homeland Security database. This evidence demonstrate that Mr. Ramirez and Mr. Lopez have entered the U.S. illegally prior and have opportunity, preparation, plan, and knowledge to violate immigration laws of the United States. On the contrary, this is Mr. PATARA's first encounter with immigration aside from his application for Naturalization in 2005. This shows a lack of opportunity, preparation, plan, and knowledge as Mr. PATARA had no prior encounters in violating U.S. immigration laws.

In addition, these immigration encounter records are admissible under the Rule 803(6) as they were made at the time of the arrest by border patrol agents, who have knowledge in regards to these types of activities. Although computer-generated, the records are generated through the regularly conducted process of fingerprinting individuals whom are under investigation by the United States Border Patrol. Making these immigration encounter records are also regular practice of investigating individuals under suspicion of violating U.S. immigration laws. These conditions will be shown by the testimony of the custodian, or in this case, the border patrol agents. At this time, the Government has not shown that the source of the information of these records indicate a lack of trustworthiness. Accordingly, these records are admissible under Rule 404(b) as prior acts and are not barred by the rule against hearsay pursuant Rule 803(6).

## IX.
## MR. PATARA REQUESTS LEAVE TO FILE FURTHER MOTIONS

At the time of these motions, Mr. PATARA and defense counsel have received some discovery from the Government. It is therefore requested that defense counsel be allowed the opportunity to file further motions should more issues arise as a result of the additional and ongoing discovery provided by the Government.

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CONCLUSION**

For the foregoing reasons, Mr. PATARA respectfully requests that this Court grant the abovementioned motions.

Dated: <u>November 23, 2018</u>                    Respectfully Submitted,


/s/ Marc X. Carlos
MARC X. CARLOS

Attorney for Defendant
Mambassee K. PATARA

DEFENDANT'S IN LIMINE MOTIONS                                        18CR2342-BTM